**Carolyn Fausett TOLEN, Plaintiff,**

v.

**A.H. ROBINS CO., INC., Defendant.**

**No. L 81–72.**

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 26, 1983.
Supplemental Opinion Sept. 13, 1983.

Mary Beth Ramey, Indianapolis, Ind., Brent E. Clary, Lafayette, Ind., for plaintiff.

James V. Donadio, Mary M. Nold Larimore, Ralph A. Cohen, Indianapolis, Ind., Brent E. Dickson, Lafayette, Ind., for defendant.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This matter comes before this court on the motion for summary judgment of the defendant, A.H. Robins Company, Inc., (Robins). Plaintiff, Carol Ann Fausett Tolen [1], brought this action alleging that she was injured by the use of the Dalkon Shield, an intrauterine contraceptive device manufactured and distributed by Robins. The sole issue to be addressed by the court is whether the present action is barred by the applicable statute of limitations. In light of the record presented on this motion, the court concludes that there is no genuine issue of fact regarding the accrual of the plaintiff's cause of action. Accordingly, the defendant's motion for summary judgment is hereby GRANTED.

## I.

### FACTUAL BACKGROUND

After the birth of her third child in January 1972, plaintiff's personal physician recommended that she have a Dalkon Shield inserted for contraceptive purposes. Thereafter, on February 15, 1972, a Dalkon Shield was inserted into the plaintiff's uterus as a temporary method of birth control. In July of that year, the plaintiff was diagnosed as being three months pregnant. Her physician advised the plaintiff that the Dalkon Shield would not be removed during the pregnancy. Plaintiff delivered a healthy, though premature, infant son on November 23, 1972. Immediately following the delivery, a bilatual tubal ligation was performed; however, the Dalkon Shield could not be located during the procedure. At that time, plaintiff was informed by her physician that she would need a second operation in two to three years to remove the Dalkon Shield.

In the ensuing three year period, plaintiff experienced several health problems, i.e., pelvic, back and leg pain and cervical erosion. After the onset of pelvic infection and a pap smear strongly suggestive of malignancy, plaintiff underwent a second operation for a hysterectomy, appendectomy and bladder repair on May 30, 1975, at which time the Dalkon Shield was found in her lower left stomach cavity and not in her uterus.

On December 20, 1979, plaintiff read a newspaper article discussing the problems concerning the Dalkon Shield. Thereafter, on November 13, 1981, plaintiff filed a complaint seeking recovery on the theories of negligence, strict liability, implied warranty, express warranty and fraud. Plaintiff alleges that as a result of the use of the Dalkon Shield, she is sterile and still experiences pain and weakness in her legs, thus limiting her mobility and her prospects for employment. She is claiming damages for

---

1. After having read her deposition, plaintiff changed the spelling of her name from Carolyn Tolen to Carol Ann Tolen stating that she had been misunderstood when she initially identified herself. This explains the apparent inconsistency between her name as it appears in the caption of the case and as it later appears in the body of the opinion. The original spelling has been retained in the caption in conformance with the official court records in this case.

her unexpected pregnancy and the pain, mental distress and financial hardship emanating from it.

Robins moved for summary judgment on February 3, 1983, contending that the present action is barred by Ind.Code Ann. § 34–1–2–2 (Burns Supp.1982), the Indiana personal injury statute of limitations. Plaintiff filed a response on March 13, 1983, opposing the motion for summary judgment on the following bases: (1) Ind.Code § 34–1–2–2 is no bar because plaintiff's damages were incapable of ascertainment until December 20, 1979; (2) the limitation period was tolled because the defendant fraudulently concealed the cause of action from the plaintiff; (3) the limitation period was tolled because the defendant is a non-resident and has not maintained an agent for service of process; (4) the action is not time barred because the plaintiff has alleged breaches of implied and express warranties, the limitation period being four years; and (5) the plaintiff has stated a prima facie case of fraud and is entitled to a six year statute of limitations applicable to fraud cases. After a hearing and oral argument held in Lafayette, Indiana on July 27, 1983, this matter was taken under advisement. Jurisdiction of this court is predicated upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

## II.

## DISCUSSION

### A.

### PERSONAL INJURY STATUTE OF LIMITATIONS

■ In determining the law applicable to the statute of limitations issue, the court must apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Goldberg v. Medtronic,* 686 F.2d 1219 (7th Cir.1982). Robins argues that this cause of action is governed by Ind.Code Ann. § 34–1–2–2 (Burns Supp.1982) which reads as follows:

The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards: (1) For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two [2] years.

■ It is the well-established rule in Indiana that a cause of action accrues at the time injury is produced by wrongful acts for which the law allows damages susceptible of ascertainment. *Montgomery v. Crum,* 199 Ind. 660, 161 N.E. 251 (1928); *Babson Brothers Co. v. Tipstar Corp.,* Ind. App., 446 N.E.2d 11 (1983). In essence, a cause of action accrues when the alleged negligence culminates in injury to the plaintiff and damages resulting from that injury are ascertainable. *Merritt v. Economy Department Store,* 125 Ind.App. 560, 128 N.E.2d 279 (1955). Therefore, the statute of limitations begins to run at the time a complete cause of action accrues or when a person becomes liable for an action. *Babson, supra.* This general rule has been interpreted to mean that the statute commences to run when the injurious action occurs though the plaintiff may not learn of the act until later. *Guy v. Schuldt et al.,* 236 Ind. 101, 138 N.E.2d 891 (1956). See also, *Whitehouse v. Quinn,* Ind.App., 443 N.E.2d 332 (1982); *French v. Hickman Moving & Storage,* Ind.App., 400 N.E.2d 1384 (1980); *Kaletha v. Bortz Elevator Company, Inc.,* 178 Ind.App. 654, 383 N.E.2d 1071 (1978).

The Supreme Court of Indiana has recently reaffirmed this rule of law in *Shideler v. Dwyer,* Ind., 417 N.E.2d 281 (1981), a case in which the court addressed the issue of when a legal malpractice action accrues. The factual situation presented in *Shideler* involved a provision of a will which was interpreted by the probate court as invalid. The plaintiff contended that the statute of limitations did not commence to run until entry of the judicial decree voiding the will provision. The court held that the damage occurred at the moment of the testator's death when the will became operative. The court noted:

For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damages be known or ascertainable but only that damage has occurred. 417 N.E.2d at 289.

■ Applying this rule to this case, it is apparent that plaintiff's cause of action is clearly barred by the Indiana statute of limitations. The plaintiff suffered, and was cognizant of, both injury and damages in November 1972 and, at the latest, by May 1975. Plaintiff is claiming damages for her pregnancy which occurred during her use of the Dalkon Shield and is further claiming damages associated with expenses incurred with raising her child. Therefore, legal injury alleged by the plaintiff occurred on the date of insertion of the Dalkon Shield in February 1972. The first evidence of damage appeared in July 1972 when plaintiff became pregnant and knew that the Dalkon Shield had failed in its intended purpose. Therefore, by July 1972 plaintiff had not only suffered legal injury but also knew that she had suffered legal damage.

Further, plaintiff was put on notice as to other elements of damage in November 1972 and May 1975. In November 1972 plaintiff was advised that the Dalkon Shield could not be located in her body and would have to be removed at a later time during the course of a second operation. The record indicates that plaintiff had intended the use of the Dalkon Shield as a temporary form of birth control and had not expected that an operation would be necessary in order to remove it. Thus, by November 1972 plaintiff was aware of the fact that the birth control device could not be removed as anticipated. Finally, in May 1975 plaintiff was informed that the Dalkon Shield was found in her lower left stomach cavity and not in her uterus where it was supposed to be. Plaintiff admits in her deposition testimony that the aforementioned events left her with many questions about the Dalkon Shield. Consequently, under Indiana's two year statute of limitations, the time within which to file suit expired in July 1974, or at the latest, May 1977.

■ Plaintiff contends that her cause of action did not occur until she discovered the causal connection between her injury and the Dalkon Shield. This allegedly occurred in December 1979 when she read an article in the *Lafayette Journal and Courier* about problems concerning the Dalkon Shield. In effect, plaintiff is advocating the application of the discovery rule to the present action.

Indiana courts have not ruled directly on the applicability of the discovery rule to medical products liability cases.[2] Plaintiff places great emphasis on the court's opinion in *Withers v. Sterling Drug, Inc.,* 319 F.Supp. 878 (S.D.Ind.1970) to support her contention that the discovery rule should be applied to this action. A careful reading of that opinion leads this court to conclude that such reliance is misplaced. In *Withers,* the plaintiff brought a personal injury action to recover damages for an eye injury allegedly caused by the defendant's drug. The plaintiff began to experience eye problems in 1962. In 1963, the plaintiff consulted a specialist who told plaintiff that her eye problems were caused by the defendant's drug but that the condition was reversible and would correct itself. It was not until 1969 that plaintiff learned her eye problems were of a permanent nature. In granting summary judgment, the court held that the plaintiff's action accrued when the plaintiff ascertained that she had suffered legal damages. *Id.* at 881. There is no language in the opinion to support plain-

---

2. *See Toth v. Lenk,* 164 Ind.App. 618, 330 N.E.2d 336 (1975) dealing with the medical malpractice statute. In this malpractice action, the court held that the malpractice statute of limitations commences to run when the patient learns of the malpractice or learns information which would lead to discovery of the malpractice if the patient exercises diligence. *See* also, *Shideler v. Dwyer,* Ind., 417 N.E.2d 281 (1981). In dicta, the Supreme Court of Indiana stated that the discovery rule may be appropriate where "the plaintiff was the client or the patient" of the defendant. 417 N.E.2d at 291. However, no such fiduciary relationship exists in this case.

tiff's interpretation of the holding, i.e., that the plaintiff's cause accrued in 1963 when plaintiff learned that a defective product caused her injury.

Moreover, all authority cited in support of the holding in *Withers* concur in the general applicable law regarding the accrual of a cause of action in Indiana, i.e., a cause of action accrues upon the occurrence of a legal injury coalesced with resulting damages. See, *Gahimer v. Virginia-Carolina Chemical Corp.,* 241 F.2d 836 (7th Cir. 1957), *Board of Commissioners of Wabash County v. Pearson,* 120 Ind. 426, 22 N.E. 134 (1889), *Montgomery v. Crum, supra.*

Even if this more liberal interpretation of the statute of limitations would be applied to this case, plaintiff's action is untimely.[3] The discovery rule argument was presented to the court in *In Re Northern District of California "Dalkon Shield" IUD Products Liability Litigation, Sidney-Vinstein v. A.H. Robins Co.,* 503 F.Supp. 194 (N.D.Cal.1980), a case factually similar to this action. There the plaintiff had filed suit after the one year California statute of limitations had run. The plaintiff had been advised by her treating physician that the Dalkon Shield had perforated her uterus and, additionally, the plaintiff had testified that she was fully aware of the fact that the device had not done what it was designed to do. The court found that the plaintiff was provided with sufficient information to discuss the basis of a potential cause of action against the defendant. In granting summary judgment the court noted:

> [a]bsent the existence of a fiduciary obligation on the part of a defendant, a plaintiff is under an affirmative duty to

exercise diligence in discovering the facts relating to her cause of action. Once a plaintiff has knowledge of information which would place a reasonable person on notice as to the possible origin of the alleged injury, the statutory period will be deemed to have commenced. *Id.* at 197.

Likewise, in this case, plaintiff had enough information to put a reasonable person on notice of the possible origin of the injury at least by May 1975. The plaintiff had actual knowledge in 1975 that the shield had failed as a contraceptive device, that surgery was required to remove the Dalkon Shield, and that the Dalkon Shield was found outside her uterus in her stomach cavity and, consequently, was not where it should be. Therefore, plaintiff's claim is time barred by the statute of limitations for personal injury actions.

## B.

### FRAUDULENT CONCEALMENT

▇ Plaintiff's next point of contention is that the complaint's allegations of fraudulent conduct tolled the limitation period under the doctrine of fraudulent concealment. While fraudulent concealment does toll the statute of limitations,[4] Indiana law narrowly defines concealment. *Morgan v. Koch,* 419 F.2d 993, 998 (7th Cir.1969). The concealment must be active and intentional; passive silence is insufficient to trigger the fraudulent concealment doctrine, absent allegations that the defendant was in a continuing fiduciary relationship with the plaintiff. *Pitts v. Unarco, Inc.,* 712 F.2d 276 at 279 (7th Cir.1983).[5]

**3.** A court addressing the identical issue has come to the same conclusion in two cases factually similar to this case. See, *Dean v. A.H. Robins, Inc.,* No. IP 80–70–C (S.D.Ind. Feb. 20, 1980), and *Neuhauser v. A.H. Robins Company, Inc.,* No. A 81–169–C, 573 F.Supp. 8 (S.D.Ind. 1983).

**4.** Ind.Code Ann. § 34–1–2–9 (Burns 1973) provides:

> If any person liable to an action, shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of

limitation, after the discovery of the cause of action.

**5.** In *Pitts,* plaintiff, brought a wrongful death action against corporations doing business in Indiana and involved at some stage in the production and distribution in Indiana of products containing asbestos. Count IV of her complaint contained an allegation of fraudulent concealment which was dismissed by the trial court before summary judgment was granted. Nevertheless, the court stated that the allegations in the complaint were insufficient to charge the defendants with fraudulent conceal-

The affirmative acts of concealment must be calculated to mislead and hinder the plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation. *Forth v. Forth,* Ind.App., 409 N.E.2d 641, 645 (1980). Further, there must be some trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry. *Forth, supra,* at 645. In addition, Indiana law requires a showing of reasonable care and due diligence on the part of the plaintiff. *Morgan v. Koch, supra,* at 999. He must have been ignorant of the fraud and have been unable to have discovered it by reasonable diligence. *Whitehouse v. Quinn,* supra, at 339.

■ The fraudulent concealment doctrine does not apply to the allegations in this case. Plaintiff has relied upon allegations that Robins misrepresented pregnancy rates, complications, side effects, hazards and dangers and radiopacity of the Dalkon Shield in an active manner calculated to prevent the plaintiff from ascertaining that legal injury had been done to her. The documents presented in this cause, depositions and exhibits, deal primarily with representations made prior to plaintiff being fitted with the Dalkon Shield. Consequently, any alleged fraud would more properly be labeled fraud in the inducement rather than fraud which would have concealed the existence of a claim. Courts which have addressed this issue are in agreement that this is not a case in which plaintiff was hindered by the action or lack of action on the part of Robins from filing a complaint during the period when she could have brought this lawsuit. See, *e.g., Philpott v. A.H. Robins Company, Inc.,* 710 F.2d 1422 (9th Cir.1983); *Nelson v. A.H. Robins Co.,* 515 F.Supp. 623 (N.D.Cal.1981).

■ An exception to the affirmative acts requirement exists where there is a fiduciary or confidential relationship giving rise to a duty to disclose material information between the parties. *Guy v. Schuldt, su-*

*pra; Whitehouse v. Quinn, supra.* In this case there is no confidential or fiduciary relationship between the plaintiff, a consumer, and Robins, a manufacturer of pharmaceutical products. This exception, then, has no application to this case.

Additionally, this court finds persuasive the rationale and conclusion set forth by the court in *Sidney-Vinstein v. A.H. Robins Company,* 697 F.2d 880 (9th Cir.1983). The court held:

> Assuming that the defendants did attempt to hide the defective nature of their product from the plaintiffs, that concealment necessarily ended in 1974 when the defendants warned physicians of the possible danger associated with the Dalkon Shield and removed the product from the market. Thus, we find that, at the very latest, the limitations clock began to run in 1974. *Id.* at 884.

In the present case, the affidavit of plaintiff's physician, Dr. Leak, establishes that the Robins detailmen informed him that the Dalkon Shield had been taken off the market and the detailmen removed all of the Dalkon Shields from his office. Therefore, any alleged concealment must have ended in 1974 and the limitations clock began to run.

### C.

### EXPRESS AND IMPLIED WARRANTY

The plaintiff has also alleged that Ind. Code Ann. § 26–1–2–725 (Burns 1974) is applicable to the present action because the complaint alleges breach of implied and express warranty. Ind.Code § 26–1–2–725 provides in pertinent part:

> (1) An action for breach of any contract for sale must be commenced within four [4] years after the cause of action has accrued ....
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender

ment. The conduct charged in the complaint was that the defendants withheld information indicating that asbestos containing products

were hazardous to the health and safety of those exposed to the products, a charge similar to that made by the plaintiff in this case.

of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

It is clear from the face of the statute that even if the four year statute of limitations is applicable to this action, plaintiff's claim is barred. The four year limitation period commences to run upon tender of delivery. This court is of the opinion that tender of delivery occurred in this case at the time the Dalkon Shield was inserted into plaintiff's uterus. The uncontroverted facts of the case reflect that the Dalkon Shield was inserted in February 1972 and this action was not commenced until November 1981. Therefore, if the normal accrual rule is applied, then the express and implied warranty causes of action for injuries resulting from the insertion of the intrauterine device would be barred by the statute of limitations since the claims were interposed more than four years later.

Further, plaintiff has attempted to argue that her case falls within an exception to the general rule that the four year limitation period commences upon tender of delivery. The exception provides that where a warranty "explicitly extends to future performance of the goods" the cause of action does not accrue until the breach is or should have been discovered. Plaintiff cites to the court language from "Answers to your Patients' Questions" (Plaintiff's Response to Motion for Summary Judgment, Exhibit P), a brochure Robins provided to physicians to give to their patients. A question and answer appearing under the heading "What to expect from your new I.U.D." reads in part:

How long can I expect protection from the Shield? For a period of several years. Some women have been effectively protected by the same I.U.D. for five years or longer . . .

Plaintiff contends that the above language explicitly states that the consumer can expect protection for at least three years and strongly implies that the protection could continue for more than five years.

No cases in Indiana have considered the applicability of the exception to the normal accrual rule under Ind.Code § 26–1–2–725(2). The court in *Stumber v. Ferry-Morse Seed Co.,* 644 F.2d 667 (7th Cir.1981), in a per curiam opinion, deals with the issue but does not indicate the degree of specificity required before a statement will be deemed "explicit" under state law.

Courts in other jurisdictions have addressed this specific issue in construing U.C.C. § 725(2), the Uniform Commercial Code provision upon which the Indiana statute is patterned. Though recognizing that this is not binding authority, this court agrees with the rule articulated by the court in *Standard Alliance Industries, Inc. v. Black Clawson Company,* 587 F.2d 813 (6th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979). There the court held that in order to fall within the exception, the warranty must make specific reference to a future time period. The court stated:

Most courts have been very harsh in determining whether a warranty explicitly extends to future performance. Emphasizing the word "explicitly", they have ruled that there must be a specific reference to a future time in the warranty. As a result of this harsh construction, most express warranties cannot since, by their very nature, they never "explicitly extend to future performance . . . ."

See also, *Raymond-Dravo-Lagenfelder v. Microdot, Inc.,* 425 F.Supp. 614 (D.Del. 1976); *Binkley Company v. Teledyne Mid-America Corporation,* 333 F.Supp. 1183 (E.D.Mo.1971), *aff'd,* 460 F.2d 276 (8th Cir. 1972); *Tomes v. Chrysler Corp.,* 60 Ill. App.3d 707, 18 Ill.Dec. 71, 377 N.E.2d 224 (1978).

Moreover, one set of commentators has said, "it should be clear that this extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to future performance of goods." J. White & R. Summers, Uniform Commercial Code § 11–9,

419 (1980). White and Summers also state that an example of a warranty explicitly extending to future performance is a lifetime guarantee by a seller. *Id.*

While certain express warranties have been found to extend explicitly to future performance, most of the courts which have considered the question in the context of U.C.C. § 2–725(2) have held that an implied warranty by its very nature cannot explicitly extend to future performance. *Stumber v. Ferry-Morse Seed Co., supra; Standard Alliance Industries, Inc. v. Black Clawson Company, supra; Wilson v. Massey-Ferguson, Inc.,* 21 Ill.App.3d 867, 315 N.E.2d 580 (1974).

The express and implied warranties in this case must be considered in light of the above authorities. Plaintiff places special reliance upon the express representations in the patient brochure. However, the express warranty relied upon does not extend explicitly to future performance. In those cases in which there was found to be an express warranty explicitly extending to future performance, the warranty specifically made reference to future time, such as "lifetime warranty", (*Rempe v. General Electric Co.,* 28 Conn.Super. 160, 254 A.2d 577 (1969)), or a warranty that a product would work satisfactorily "at all times", (*Mittasch v. Seal Lock Burial Vault, Inc.,* 42 A.D.2d 573, 344 N.Y.S.2d 101 (1973)).

The language in plaintiff's exhibit—"For a period of several years"—clearly does not meet the exception because it does not meet the requirement of a "specific reference to a future time period." Accordingly, the express warranty cause of action is time barred. The implied warranty cause of action is also barred by the statute of limitations with respect to all injuries being alleged.

## D.

### DEFENDANT'S STATUS AS A NON-RESIDENT WITHOUT AN AGENT FOR SERVICE OF PROCESS WITHIN THE MEANING OF IND.CODE 34–1–2–6

■ In addition to the arguments already considered, plaintiff contends that the present action is not barred because the statute of limitations was tolled by Ind. Code Ann. § 34–1–2–6 (Burns Supp.1982), which constitutes an exception to the limitations period, and reads in pertinent part:

(a) the time during which the defendant is a non-resident of the state shall not be computed in any of the periods of limitation except during such time as the defendant by law maintains in the state of Indiana an agent for service of process or other person, who, under the laws of the state of Indiana, may be served with process as agent for the defendant.

Plaintiff's reliance on Ind.Code § 34–1–2–6 is misplaced. The Secretary of State has at all times been deemed to be the agent of A.H. Robins upon whom service of summons could have been made by virtue of Ind.Code Ann. § 23–3–3–1 (Burns Supp. 1982). The statute states in relevant part as follows:

The engaging in any transaction or the doing of any business in this state by any foreign corporation not licensed nor admitted to do business in this state under any existing act or any act hereafter enacted shall be deemed equivalent to an appointment by such foreign corporation of the Secretary of State, or his successor in office, to be the true and lawful attorney and agent of such foreign corporation . . .

The record contains the affidavit of William A. Forrest, Jr., Vice President and General Counsel of Robins, establishing that the defendant was doing business at all times relevant to plaintiff's complaint. It is clear that under Indiana law the Secretary of State is deemed to be the agent of Robins because the company has engaged in a transaction and done business in Indiana. Consequently, Ind.Code § 34–1–2–6 does not operate to toll the statute of limitations in this case.

Further, plaintiff has argued in her brief that because Robins has failed to register with the Secretary of State, and, therefore, does not maintain a resident agent in Indi-

ana for service of process, that the statute of limitations is tolled. The plaintiff has represented to this court that this specific issue has not been decided under Indiana law, and cites cases from foreign jurisdictions. However, this precise issue was addressed by this court in *Dague v. Piper Aircraft Corporation,* 513 F.Supp. 19 (N.D. Ind.1980), *aff'd by order,* 654 F.2d 727 (7th Cir.1981), applying Indiana law in a diversity case. The court ruled in *Dague* that Ind.Code § 34–1–2–6 is inapplicable when there is an agent for the service of process. Specifically, the court held in *Dague* that non-resident corporations are subject to the provision of Ind.Code § 23–1–2–5, which establishes the Secretary of State as a statutory agent for service of process for a foreign corporation admitted to do business but not having a resident agent in Indiana.

The rule of law articulated in *Dague* is well supported by Indiana authority. The issue was addressed by the court in *Forslund v. New York Central Systems,* 146 Ind.App. 1, 252 N.E.2d 502 (1970). There the court stated:

> While we have found no Indiana authority on the point, according to a majority of the authorities elsewhere, the statute of limitations, despite the saving clause, is available to a foreign corporation which has placed itself in such a position within the State so as to be subject to personal service of process. 20 C.J.S. Corporations, § 1934, p. 198; 36 Am. Jur.2d, Foreign Corporations § 72, p. 87.

252 N.E.2d at 504.

Also, the court in *American States Insurance Company v. Williams,* 151 Ind.App. 99, 278 N.E.2d 295, 301 (1972), in addressing the amenability of an individual to service of process, held that a person is at all times amenable for service within the state or by service upon a Secretary of State under the nonresident motorists statute.

6. Ind.Code Ann. § 34–1–2–1 (Burns 1973) reads in part:
> The following actions shall be commenced within six [6] years after the cause of action has accrued, and not afterwards.

Thus, the essential element determinative of this issue is the existence of a statutory agent for the service of process. Such an agent exists in this case in the person of the Secretary of State of Indiana pursuant to Ind.Code § 23–3–3–1 thereby eliminating Ind.Code § 34–1–2–6 as a device by which to toll the statute of limitations.

### E.

### FRAUD

Plaintiff's final contention is that the present action is governed by the six year fraud statute of limitations.[6] She claims Robins made false representations to physicians and to the American public with the full knowledge of their falsity with the result being that plaintiff justifiably relied upon the representations and subsequently sustained injury.

This court does not believe that the cause of action for fraud should be treated as a special cause of action for statute of limitations purposes. It is the well established rule in Indiana that in determining what period of limitations applies the essence of the action controls rather than the form in which it is pleaded. *Koehring Co. v. National Automatic Tool Co.,* 257 F.Supp. 282 (S.D.Ind.1966), *Shideler v. Dwyer, supra, Whitehouse v. Quinn, supra.*

The Supreme Court of Indiana recently addressed this issue in *Shideler v. Dwyer, supra,* a legal malpractice case discussed above. The plaintiff's complaint alleged breach of contract, negligence, fraud, constructive fraud and breach of fiduciary duty. That court held that the method of pleading did not control the limitations period applicable to the complaint. Regardless of the plaintiff's pleading label and theories of recovery, the lawsuit was determined to be a malpractice case governed by the statute of limitations applicable to such actions.

\* \* \* \* \* \*

Fourth. For relief against frauds.

Further support is found in *French v. Hickman Moving & Storage, supra,* in which the plaintiff contended that the six year statute of limitations for contracts not in writing was applicable to her claim for breach of a bailment contract. The trial court held that the two year statute of limitations was applicable because the action sounded in conversion. That decision was affirmed by the Court of Appeals because "it is the alleged tortious damage to the plaintiff's personal property which gave rise to her cause of action and it is for such damage that she sought relief." 400 N.E.2d at 1391.

 The essence of the plaintiff's complaint in this case is that the defendant manufacturer placed a defective product on the market which caused injury to plaintiff. It is, in fact, a products liability action for personal injuries received and, as such, it is properly governed by Ind.Code § 34–1–2–2.

## CONCLUSION

Accordingly, for the above reasons, no genuine issue of material fact exists and it is therefore ordered that summary judgment in favor of the defendant, Robins, be, and the same is hereby GRANTED.

## SUPPLEMENTAL MEMORANDUM AND ORDER

Subsequent to this court's decision in *Carolyn Fausett Tolen v. A.H. Robins Company, Inc.,* filed August 26, 1983, the Court of Appeals for the Seventh Circuit decided *Kathleen M. Hansen v. A.H. Robins Co., Inc.,* 715 F.2d 1265 (7th Cir.1983). Notwithstanding the holding of this recent case, this court reaffirms its decision in *Carolyn Fausett Tolen v. A.H. Robins, Inc.,* for the following reasons.

In *Hansen,* A.H. Robins raised the Wisconsin three-year statute of limitations for personal injury action as a bar to plaintiff's claims and moved for summary judgment which was granted by the district court. Following the district court's action in *Hansen,* the state of Wisconsin adopted a certification procedure by which an unsettled question of state law may be decided by the Supreme Court of Wisconsin upon request of the Supreme Court of the United States, the United States Court of Appeals, or the highest appellate court of another state. At the time the *Hansen* case was presented to the Seventh Circuit on appeal, the court had recently decided *Neubauer v. Owens-Corning Fiberglas Corp.,* 686 F.2d 570 (7th Cir.1982), a case involving asbestos-caused injuries which posed a statute of limitations question under Wisconsin law. Since *Hansen* presented a statute of limitations question analogous to that in *Neubauer* and having found no controlling decision of the Wisconsin courts related to progressive diseases caused by prolonged exposure to a foreign substance at the time *Neubauer* was decided, the Seventh Circuit chose to utilize the Wisconsin Certification scheme and present the issue to the Supreme Court of the state of Wisconsin. Upon doing so, the Supreme Court held that the discovery rule is to be applied in personal injury actions when the injury was caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance.

Inasmuch as the pivotal issue of the *Hansen* case, the statute of limitations problem, was decided within the context of the substantive law of the state of Wisconsin, and that law is different than the law of Indiana in that this state does not adhere to the discovery rule, the decision in *Carolyn Fausett Tolen v. A.H. Robins Company, Inc.* stands affirmed.