**Rod GOEMAN, Plaintiff,**

v.

**Gordon D. KEATING and William Keating, Defendants.**

Civ. No. 78–4104.

United States District Court, D. South Dakota, S. D.

Sept. 30, 1980.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, S.D., for plaintiff.

A. Thomas Pokela of Cadwell, Brende & Sanford, Sioux Falls, S.D., for defendants.

## MEMORANDUM DECISION

NICHOL, Senior District Judge.

This is an odometer requirements case brought by the plaintiff, Rod Goeman, against the defendants, Gordon D. Keating and William Keating. The plaintiff alleges that the defendants violated the odometer requirements of the Motor Vehicles Information and Cost Savings Act, 15 U.S.C. section 1981 *et seq.* (1974), (hereinafter referred to as the Act). Specifically, the plaintiff alleges that the defendant, with the intent to defraud the plaintiff, failed to give notice that the odometer had previously been broken and repaired and state what the mileage was before the repairs, as required by section 1987 of the Act; that the defendant failed to disclose the cumulative mileage, or if this was unknown, that the odometer reading was inaccurate, as required by section 1988 of the Act. The plaintiff seeks monetary relief as well as costs and attorney fees provided by section 1989 of the Act.

The Court makes the following findings of fact and conclusions of law. On February 10, 1978, the plaintiff Goeman purchased an automobile from the defendants Keatings. Although the car was held in Gordon Keating's name, William Keating had possession and control over the car, transacted the sale, and retained all the profits made from the sale.

The automobile, a 1969 Camero, being quite rare, was considered a collector's car. As such the mileage was an important factor in the price of the car. At the time of the purchase Goeman and William Keating discussed the mileage. Goeman was told by Keating that the odometer reading was "close enough" to true mileage. Keating never informed Goeman that the odometer reading was inaccurate due to a twice broken speedometer. William Keating never gave Goeman any written mileage statements. Goeman paid Keating $3,000 for the automobile. At the time of the sale the odometer read 76,435 miles.

Goeman, without discovering that the odometer reading was inaccurate, advertised and sold the Camero six months later to Bruce Schoonover. The purchase was made by way of a trade for a 1976 Malibu with a book value of $4,400 and accessories valued at $400. Four days after the transaction was completed Schoonover discovered an oil sticker on the Camero dated September 12, 1977, with a mileage reading of 76,431. This was only four miles less than the mileage reading when Goeman purchased the automobile in February 1978 although five months had passed. Evidence of inspection certificates issued in March 1976 and August 1977 showed the same odometer reading of 76,431 miles. The transaction between Goeman and Schoonover was voided and Goeman traded back the Malibu for the Camero.

Goeman then contacted William Keating and asked that he repurchase the car. At that time Keating admitted that there was something wrong with the mileage readings, and agreed to the return of the Camero for $3,500. Keating, however, never took the car back, nor did he ever contact Goeman.

Goeman finally sold the car for $2,800. At that time Goeman gave the purchaser a mileage statement which stated that the mileage was not as represented on the odometer.

The present suit was filed by Goeman in October 1978 alleging that Gordon D. Keating and William Keating violated the odom-

eter requirements of the Motor Vehicles Information and Cost Savings Act, 15 U.S.C. section 1981 *et seq.* (1974). Specifically, Goeman alleges that Keating failed to place any notice, required by section 1987 of the Act, to the effect that the odometer had been broken and repaired and was incapable of registering the same mileage as before such repair. Further, Goeman alleges that Keating failed to give written notice or otherwise notify Goeman of the cumulative mileage on the Camero as required by section 1988(a)(1); and even if such cumulative mileage was unknown to Keating, Keating failed to inform Goeman that the actual mileage was unknown even though Keating knew the odometer reflected mileage different from the actual mileage. 15 U.S.C. section 1988(a)(2). Finally, Goeman alleges that the violations were done with an intent to defraud. Goeman seeks monetary relief in the sum of $1,500 and attorney fees as provided by section 1989 of the Act.

This case raises the following issues:

1. Whether the defendant Gordon D. Keating is a transferor or owner within the meaning of sections 1987, 1988 of the Act; and if so, whether he had the requisite fraudulent intent for violation of the Act?

2. Whether William Keating possessed the requisite intent to defraud Goeman when he failed to place a notice to the effect that after the odometer was broken and repaired its reading was no longer accurate; and further, failed to disclose the cumulative mileage on the car or that the mileage was unknown to him at the time of the sale of the car to Goeman, as required by sections 1987, 1988 of the Act?

It is Goeman's contention that, although there is no evidence of Gordon Keating violating the disclosure requirements of section 1988 of the Act, he is liable as owner for the acts of his agent William Keating

under section 1987 of the Act. Section 1987 provides that nothing:

> shall prevent the service, repair or replacement of an odometer, provided the mileage indicated thereon remains the same as before the service, repair, or replacement. Where the odometer is incapable of registering the same mileage as before such service, repair, or replacement, the odometer shall be adjusted to read zero and a notice in writing shall be attached to the left door frame of the vehicle *by the owner or his agent* specifying the mileage prior to repair or replacement of the odometer and the date on which it was repaired or replaced (emphasis added).

■ The evidence at trial established that, although Gordon Keating held title to the 1969 Camero, the car was under the sole control of his son William. William paid all the bills and handled all the upkeep of the car, and was its sole possessor. William Keating dictated the terms of the transaction and kept all the money made on the sale of the car to Goeman. Gordon Keating knew almost nothing of the car and never met Goeman. It is the opinion of the Court that even though title to the car was in Gordon Keating's name he does not fall within the meaning of owner in section 1987 of the Act. He never had possession of the car, had no control over the car, and received no money upon the sale of the car.

■ Even if Gordon Keating was considered an owner within section 1987 of the Act, the Court finds that there is no evidence that he possessed the requisite intent to defraud Goeman as required by section 1989 of the Act.[1] *Ryan v. Edwards,* 592 F.2d 756, 761 (4th Cir. 1979); *Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381 (D.Neb.1977), *aff'd,* 578 F.2d 721 (8th Cir. 1978); *Bryant v. Thomas,* 461 F.Supp. 613, 616 (D.Neb.1978).

---

1. 15 U.S.C. section 1989(a) provides that:

(a) Any person who, with the intent to defraud, violates any requirements imposed under this subchapter shall be liable in an amount equal to the sum of–

(1) three times the amount of actual damages sustained or $1,500, whichever is greater; and

(2) in the case if any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

■ The second issue is whether William Keating possessed the requisite intent to defraud Goeman. There is little question but that William Keating violated sections 1987 and 1988 of the Act.[2] But those violations alone are not sufficient to allow Goeman recovery under the Act. The plaintiff has the burden of proving that the violations were made with an intent to defraud. (See cases cited above). Fraudulent intent, however, can be inferred from the circumstances. *Bryant, supra* at 616; *Clayton v. McCary*, 426 F.Supp. 248, 258 (D.Ohio 1976). A widely accepted standard for determining whether the plaintiff has met its burden of proof as to fraudulent intent is set forth in the case of *Delay v. Hearn Ford*, 373 F.Supp. 791, 796 (D.S.C.1974).

> All that is required of a purchaser before recovery will be allowed is that a change in the odometer reading has occurred and that the seller has failed to disclose the change. An intent to defraud arises from the proof of the foregoing in the absence of an explanation of the odometer change.

The *Delay* standard has been applied by courts within the Eighth Circuit. *Duval, supra* at 1386, aff'd, 578 F.2d 721 (8th Cir. 1978); *Bryant v. Thomas*, 461 F.Supp. at 616. See also Annot. 28 A.L.R. Fed. 576 (1976).

■ The evidence demonstrates that William Keating knew of the odometer's inaccuracies. He fixed it on two occasions. He testified that he knew the odometer was then inaccurate, and yet he failed to place any notice in the automobile as required by section 1987 of the Act. He received inspection certificates for 1977 and 1978 showing that the odometer had not moved in over a year. He admitted that he did not know how long the odometer was broken or the true mileage of the car. Yet he failed

to disclose that the odometer was not reflecting the actual mileage at the time of the sale of the car as required by section 1988 of the Act. The evidence amply fulfills the plaintiff's burden of proof on the intent question as set out by the *Duval* court. There was a change in the odometer, the change was not disclosed to the purchaser, Goeman, and as defendant admits in brief, no explanation was made for the odometer change.

Goeman seeks the statutory damages of $1,500 or treble the actual damages, whichever is the greater, plus statutory costs and attorney fees as provided by section 1989 of the Act. The statutory damages have been defined as the difference between the amount paid for the automobile and the fair market value of the same type of car with the number of miles it had actually travelled, plus incidental expenses. *Duval, supra* at 1388, aff'd 578 F.2d 721 (8th Cir. 1978). Applying this test to the facts of the case it appears that Goeman paid $3,000 for the car and received $2,800 when selling it with an unknown odometer reading. In addition Goeman expended $274.99 in interest for financing his purchase of the car. Actual damages are thus $474.99; treble damages are less than the statutory $1,500. Thus, the plaintiff is entitled to $1,500–the greater of actual damages trebled and the sum of $1,500–and attorney fees and costs as against William Keating only. 15 U.S.C. section 1989.

Counsel for the plaintiff will submit an order in accordance with the above memorandum decision, and in addition will submit an estimation to the Court of attorney fees, with copy to opposing counsel. The estimation will include time spent in and out of court.

---

**2.** 15 U.S.C. section 1988(a) provides that:

(a) Not later than 90 days after October 20, 1972, the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.