UNITED STATES of America,
Plaintiff-Appellee,

v.

David E. POWELL,
Defendant-Appellant.

No. 85–3143.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1986.

Decided Dec. 30, 1986.

Herb Sundby, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Ronald H. Hoevet, Hoevet & Snyder, Portland, Or., for defendant-appellant.

Before WALLACE, FERGUSON and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Defendant David Powell was convicted on three counts of violating 18 U.S.C. § 2314 and on six counts of falsely certifying automobile odometer readings in violation of § 15 U.S.C. §§ 1988(b) & 1990c, and 18 U.S.C. § 2 (the "false certification" counts). On appeal he argues that the trial court erred in admitting certain evidence and in not entering a judgment of acquittal on the false certification counts. We conclude that if the trial court erred in its evidentiary rulings, the error was harmless and insufficient to justify reversal on any count. But we agree with the defendant that he was entitled to an acquittal on the false certification counts. We thus affirm all the defendant's convictions under § 2314 and reverse his convictions on the false certification counts.

## I.

The relevant facts can be simply stated. Powell was the sales manager of Colonial Car Company, a sole proprietorship owned by Robert Lyons. Colonial Car Company was engaged in the business of purchasing used automobiles from "Dealer" auto auctions and reselling them to used car retailers. All the counts alleged that Powell arranged the sale of various used cars, knowing that the odometers on the cars had been rolled back, and that he falsely certified that the odometer readings were accurate. The § 2314 counts involved the sale of used cars to an out-of-state car dealer, who paid for the cars by checks that traveled interstate. The false certification counts involved separate consignments of used cars to auto auctions. For each false certification count, the evidence showed that Powell signed, in the space designated "transferor's signature (seller)," sales invoices showing false mileage readings. A jury convicted Powell on all counts.

## II.

Powell first argues that the trial court committed reversible error by admitting a witness' prior consistent statement and false odometer certifications that Powell signed subsequent to those for which he was indicted. We do not reach the issue of whether the rulings were erroneous because, even if they were, the error was harmless. If "it is more probable than not that the error did not materially affect the verdict," then reversal is not required. *United States v. Valle-Valdez,* 554 F.2d 911, 915 (9th Cir.1977) (emphasis omitted). Here, the other evidence of Powell's intent in the record is overwhelming. Moreover, the government introduced into evidence six false mileage certifications directly relating to the indictments; the chance that the jury might have been improperly influenced by the ones Powell objects to is remote. As Powell's evidentiary challenges are the only grounds raised on ap-

peal concerning the § 2314 counts, we affirm his convictions under § 2314.

### III.

A person cannot violate § 1988(b), even if he willfully provides false mileage information to a transferee, unless he is a "transferor." The regulations define a transferor as "any person who transfers his ownership in a motor vehicle." 49 C.F.R. § 580.-3. Powell argues that he was not a transferor, and thus cannot be convicted under § 1988(b), because he never had an ownership interest in any of the cars sold with false mileage readings.

We agree with the defendant. Powell had held himself out as the owner of the vehicles at issue, arranged the sales, and signed the sales certificates as transferor, but was at all times merely an agent for the true owner, Colonial Car Company. He never had any legal or beneficial ownership interest in the vehicle. It is true that defendants have at times been held liable as transferors even if under the relevant state law they might not have been deemed to be the legal owners or to be transferring their ownership. *See United States v. Ellis*, 739 F.2d 1250 (7th Cir.1984); *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248 (8th Cir.1983); *Goeman v. Keating*, 498 F.Supp. 700 (D.S.D.1980). In all these cases, however, the transferors had some legal or beneficial ownership interest in the vehicles at issue. *See Ellis*, 739 F.2d at 1253 (legal title); *Tusa*, 712 F.2d at 1251–52 (legal title); *Goeman*, 498 F.Supp. at 701–02 (beneficial owner). These cases largely reflect the view that interpretation of §§ 1988 and 580.3 should be guided by a uniform nationwide standard of "ownership" that does not vary state by state depending upon what that state deemed to be the relevant indicia of ownership. *See Ellis*, 739 F.2d at 1254; *Tusa*, 712 F.2d at 1252. The cases thus merely stand for the proposition that persons who had certain legal or beneficial ownership interests in cars can be considered transferors for purposes of § 1988 even if they would not have been considered owners or transfer-ors at state law. The cases do not go so far as to include those who, like Powell, never had any legal or beneficial ownership interest in a transferred car.

Indeed, in the only case presenting a fact pattern similar to the case at bar, it was held that the president of a car dealership could not be the transferor of a car, *despite the fact that he signed as the seller*, because he never had any actual ownership interest in the car. *Cwiakala v. Economy Autos*, 587 F.Supp. 1462, 1465 (N.D.Ind. 1984). Being the apparent owner and seller of a car is not enough to make one a transferor—one must have some legal or beneficial ownership interest in the car. *See McGinty v. Beranger Volkswagen*, 633 F.2d 226, 230 (1st Cir.1980); *Ryan v. Edwards*, 592 F.2d 756, 762 (4th Cir.1979).

The government argues that even if Powell was not a transferor he could be convicted under 15 U.S.C. § 1990c(a). That section criminalizes intentional violations of § 1988, among others, providing criminal penalties for "[a]ny person who knowingly and willfully commits any act or causes to be done any act that violates any provision of this subchapter." The government reasons that Colonial Car Company, the transferor, violated § 1988(b) by furnishing false mileage certificates to the transferee through its agent, Powell. By intentionally furnishing mileage certificates he knew to be false, Powell thus "knowingly and willfully ... cause[d] to be done [an] act that violate[d]" § 1988, even though Powell could not, as a non-owner, have himself violated § 1988. Although certainly a viable theory, this argument was raised for the first time on appeal, and no basis for raising the argument appears anywhere in the record. The indictment and jury instructions refer to Powell as a transferor, with § 1990c included only as the provision that allows criminal penalties.

Alternatively, the government contends that the defendant could be convicted under 18 U.S.C. § 2 for aiding and abetting a crime against the United States. Powell contends that an aiding and abet-

ting conviction cannot stand because the government has not introduced sufficient evidence to show that a principal committed a crime. The government correctly points out that a defendant can be convicted of aiding and abetting even if a principal is never identified or convicted. *See United States v. Mehrmanesh*, 689 F.2d 822, 835 (9th Cir.1982); *United States v. Chenaur*, 552 F.2d 294, 300 (9th Cir.1977); *Feldstein v. United States*, 429 F.2d 1092, 1095 (9th Cir.), *cert. denied*, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970). Nonetheless, a defendant cannot be criminally convicted absent proof that a principal criminal offense was committed. *See, e.g., United States v. Hurd*, 642 F.2d 1179, 1182 (9th Cir.1981); *United States v. Jones*, 425 F.2d 1048, 1056 (9th Cir.), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir.1979); *United States v. Barker*, 542 F.2d 479, 484 (8th Cir.1976). The fact that the principal need not be identified or convicted has never been thought to obviate the need for proof showing that an underlying crime was committed by someone. *See United States v. Hudson*, 717 F.2d 1211, 1214 (8th Cir.1983); *United States v. Campa*, 679 F.2d 1006, 1013 (1st Cir.1982); *United States v. Perry*, 643 F.2d 38, 45 (2d Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981); *United States v. Barfield*, 447 F.2d 85, 89 (5th Cir.1971). Rather, courts in this circuit, as in others, continue to require evidence showing that a principal offense has been committed—including requiring evidence that some principal had the requisite intent—despite acknowledging that identification or conviction of the principal is not per se necessary. *See United States v. Barnett*, 667 F.2d 835, 841–42 (9th Cir.1982); *Chenaur*, 552 F.2d at 299–300. In this case, the prosecution has demonstrated that Powell had the requisite intent but made no showing that any person other than Powell, identified or otherwise, had the necessary intent to violate § 1990c.

AFFIRMED IN PART AND REVERSED IN PART.

FERGUSON, Circuit Judge, concurring in part and dissenting in part:

I concur in Judge Norris's opinion with the exception of the reversal of defendant's conviction on the false certification counts, 15 U.S.C. §§ 1988(b) and 1990c. I respectfully dissent on the issue of those counts. Under the majority's interpretation, conduct which Congress specifically defined as criminal will go unpunished in the Ninth Circuit.

In 1972, when Congress added the Odometer Requirements to the Motor Vehicle Information and Cost Savings Act, subchapter IV of chapter 46 of title 15 of the United States Code, it stated in the congressional findings and declaration of purpose:

The Congress hereby finds that purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value of such vehicle; that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by a motor vehicle assists the purchaser in determining its safety and reliability; and that motor vehicles move in the current of interstate and foreign commerce or affect such commerce. It is therefore the purpose of this subchapter to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers.

15 U.S.C. § 1981.

To protect purchasers of motor vehicles, Congress directed the Secretary of Transportation to prescribe rules requiring any transferor to give a written disclosure to a transferee of the cumulative mileage registered on the odometer. 15 U.S.C. § 1988(a). Congress also decreed that no transferor shall violate any such rule or give a false statement to a transferee in making any disclosure. 15 U.S.C. § 1988(b). Simply stated, Congress re-

quired that any transferor of an automobile must give a written, truthful disclosure to the transferee of the cumulative mileage registered on the odometer.

The regulations promulgated under section 1988(b) define a transferor as "any person who transfers his ownership in a motor vehicle by sale, gift, or any means other than by creation of a security interest." 49 C.F.R. § 580.3. The defendant in this case had no ownership interest. Therefore, he was not a transferor. However, even though the defendant was not a transferor, he nevertheless did provide certifications and the certifications were false. Congress specifically dealt with persons who, although not transferors and therefore not required to provide certifications, nevertheless give false certifications. Title 15 U.S.C. § 1990c(a) was passed in 1976. In that section, under which the defendant was prosecuted, Congress stated:

§ 1990c. Criminal penalties; ...

(a) Any person who knowingly and willfully commits any act or causes to be done any act that violates any provision of this subchapter or knowingly and willfully omits to do any act or causes to be omitted any act that is required by any such provision shall be fined not more than $50,000 or imprisoned not more than one year, or both.

Congress did not limit section 1990c(a) to "transferors"; instead, Congress made "any person" liable. "[A]ny person" who commits an act which violates a provision of the subchapter is guilty of violating the statute. Filing a false certificate is an act which violates a provision of the subchapter. 15 U.S.C. § 1988(b). Thus, under section 1990c, "any person" who commits that act is guilty.

· The defendant asserts, and the majority concludes, that liability under section 1990c is derivative of section 1988 and is dependent upon showing that the defendant was a transferor. The majority cites *McGinty v. Beranger Volkswagen*, 633 F.2d 226, 230 (1st Cir.1980), and *Ryan v. Edwards*, 592 F.2d 756, 762 (4th Cir.1979), for the proposition that one must have some legal or beneficial ownership in a motor vehicle before there is liability under the odometer subchapter. However, in both cases the courts held only that *civil liability* under section 1989 was derivative of section 1988 and dependent upon a showing that the defendant was a transferor.

The language of sections 1989 and 1990c differ. Section 1989 imposes *civil liability* on any person who with intent to defraud violates any requirement imposed by the odometer subchapter. Only transferors are required to give certificates. Section 1990c, which imposes *criminal liability*, is much broader. It provides that any person who knowingly and willfully commits any act that violates any provision of the subchapter is criminally liable. The giving of a false certificate is such an act.

*McGinty* and *Ryan* are, therefore, not applicable when criminal liability is based on section 1990c, a provision which was enacted in 1976, four years after the adoption of sections 1988 and 1989, to strengthen enforcement in light of the ineffectiveness of civil remedies in reducing odometer tampering. The Senate Report accompanying the Senate bill which was passed stated that:

While Title IV established a comprehensive law prohibiting odometer tampering, it provided for enforcement only through private civil actions or injunctive actions. In over two years, only one injunctive enforcement action has been brought by the Attorney General and few consumers have utilized the private civil action provisions. In testimony before the Senate Commerce Committee, officials of the Department of Transportation indicated that without additional enforcement powers and sanctions, it would be virtually impossible to put a halt to the trafficking of vehicles in interstate commerce which had been subject to odometer tampering.

S. Rep. No. 94–155, 94th Cong., 2d Sess. 1, 6, *reprinted in* 1976 U.S. Code Cong. & Admin. News 1718, 1723.

Thus, it is clear that while a transferor may be the only one liable in civil proceed-

ings, the limitation was specifically and intentionally eliminated by Congress for the imposition of criminal liability. To conclude otherwise thwarts the general purpose of the statute and makes fine-line distinctions contrary to congressional intent and statutory language. The defendant committed prohibited, criminal acts by filing false certificates. Therefore, I must dissent from the majority's reversal of the defendant's conviction on the false certification counts.